UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SANDRO MAYORAL-CLIMICO,                                     :
JUAN CARLOS SANCHEZ ANDRADE, and
REYMUNDO MOLINA MEDEL,                                      :
individually and on behalf of others similarly
situated,                                                    :

         Plaintiffs,          :

     -against-                          : **REPORT AND RECOMMENDATION**

PAPA FRESH, INC. d/b/a Papa John's,                          : 16-CV-7079 (JGK) (KNF)
PAPA EXPRESS, INC. d/b/a Papa John's,
RICH FOODS 37 LLC d/b/a Papa John's,                         :
WONKA HOLDINGS CORP. d/b/a Papa John's,
RICHARD D. SCHRAGGER, and ALICE                              :
MCLAMB,
                  :
         Defendants.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE

## PROCEDURAL BACKGROUND

  Sandro Mayoral-Climico ("Mayoral-Climico"), Juan Carlos Sanchez Andrade ("Sanchez Andrade") and Reymundo Molina Medel[1] ("Molina Medel") commenced this action against Papa Fresh, Inc. ("Papa Fresh"), Papa Express, Inc. ("Papa Express"), Rich Foods 37 LLC ("Rich Foods"), Wonka Holdings Corp., all doing business as Papa John's, Richard D. Schragger and Alice McLamb, asserting: (1) "Violation of 29 U.S.C. §203(m) and (t)—Illegal Retention of Tips"; (2) "Illegal Tip Retention, NYLL [New York Labor Law] §146-2.18 and NYLL §146-

---

[1] The complaint names and the Affidavit of Accounting, Docket Entry No. 108, refers to this plaintiff as Reymundo Molina Medel. However, the affidavit submitted by this plaintiff indicates his name as Reymundo Molina Medal, although his signature contains only his first name and the first initial of his last name. See Docket Entry No. 106-7. The Court will refer to this plaintiff by his name as it is spelled in the complaint.

1

2.20"; (3) "Unlawful Deductions, NYLL 193 & 196(d)"; (4) "Violations of the Fair Labor Standards Act ['FLSA']—Minimum/Wage"; (5) "Violation of New York Labor Law—Minimum Wage"; (6) "Violations of the Fair Labor Standards Act—Overtime Wage"; (7) "Violation of New York Labor Law—Overtime Pay"; (8) "Violation of New York Labor Law—Record-Keeping Requirements"; (9) "Violation of New York Labor Law—Time of Hire Wage Notice Requirement"; (10) "Violation of New York Labor Law—New York Pay Stub Requirement"; (11) "Failure to Pay Uniform Maintenance Pay 12 N.Y.C.R.R. §146-1.7 and 12 N.Y.C.R.R §137-1.8"; (12) "Breach of Implied Contract for Reimbursement of all Costs and Expenses of Bicycles, including Depreciation, Insurance, Maintenance and Repairs"; (13) "Civil damages for fraudulent filing of IRS returns. Violations of 26 USC §7434"; and (14) "Civil damages for Deceptive Acts and Practices. Violations of New York General Business Law §349."  A default judgment was entered against the defendants and the matter referred to the undersigned for an inquest on damages.  See Docket Entry Nos. 65 and 66.  The Court directed the plaintiffs to serve and file their proposed findings of fact and conclusions of law and an inquest memorandum accompanied by supporting affidavits and exhibits, setting forth proof of their damages.  See Docket Entry No. 67.  The plaintiffs filed their proposed findings of fact and conclusions of law, affidavits with exhibits and made a motion for attorney's fees, supported by a declaration by their attorney, John Troy ("Troy") of Troy Law, PLLC ("Troy Law").  See Docket Entry Nos. 74, 88, 89 and 90.  On November 8, 2019, the Court conducted an inquest on damages hearing.  Thereafter, the plaintiffs filed: (a) "Plaintiffs' Amended Proposed Findings of Fact and Conclusions of Law" with declarations and exhibits; and (b) a supplemental "Affidavit of Accounting" with an exhibit respecting their damages calculations.  See Docket Entry Nos. 106 and 108.

**FINDINGS OF FACT**

Mayoral-Climico was employed by the defendants as a pizza deliveryman at Papa Fresh from January 1, 2014, through May 31, 2014.  Sanchez Andrade was employed by the defendants as a pizza deliveryman at Papa Fresh from June 1, 2013, through November 1, 2015.  Molina Medel was employed by the defendants as a pizza deliveryman, first at Rich Foods and transferred towards the end of his employment to Papa Express, from September 5, 2015, through January 20, 2017.  Papa Fresh, Papa Express, and Rich Foods each had a system to track how much time its deliverymen spent making deliveries, operated by their respective managers.

Mayoral-Climico worked regularly from 10:30 a.m. to 6:00 p.m. five days per week (Tuesdays and Thursdays off), or about 37.5 hours per week.  Mayoral-Climico kept track of his time on a time clock.  He would punch in when he came to work and would punch out when he left work each day.  Mayoral-Climico performed non-tipped work regularly between two and three hours each day.  Mayoral-Climico never received any written information about minimum wage or overtime compensation and he never saw any labor-related posters at the restaurant.  Mayoral-Climico was required to use a bicycle for deliveries, and he purchased one regular bicycle for $80 and one electric bicycle for $1,350 so he could perform his job.

Sanchez Andrade worked regularly from 8:00 a.m. to 6:00 p.m. five days per week (Mondays and Tuesdays off), or about 50 hours per week.  Sanchez Andrade spent between 10:00 a.m. and 5:00 p.m. on the clock, and worked the time between 8:00 a.m. and 10:00 a.m., and between 5:00 p.m. and 6:00 p.m., off the clock, typically cleaning the restaurant.  Sanchez Andrade was not paid for his off-the-clock work, but was paid for about 35 hours per week.  Sanchez Andrade performed non-tipped work regularly between two and three hours each day.  During his employment, Sanchez Andrade did not receive any written information about

3

minimum wage or overtime compensation and did not see any labor-related posters at the restaurant. Sanchez Andrade was required to use a bicycle for deliveries, and he purchased one regular bicycle for $150 and one electric bicycle for $500 so he could perform his job.

Molina Medel worked regularly from 5:00 p.m. to 10:00 p.m. four weekdays per week (either Tuesdays or Wednesdays off) and from 5:00 p.m. to 2:00 a.m. the next day two weekend days per week (Saturdays and Sundays), or about 38 hours per week. Molina Medel kept track of his time on a time clock. He would punch in when he came to work and would punch out when he left work each day. Molina Medel performed non-tipped work regularly between two and three hours each day. During his employment, Molina Medel never received any written information about minimum wage or overtime compensation and he never saw any labor-related posters at the restaurant. Molina Medel was required to use a bicycle for deliveries, and he purchased two electric bicycles for a total of $1,250 so he could perform his job.

Throughout his employment, Mayoral-Climico was paid at a rate of $5.65 per hour, which amounted to $8.00 minus a tip credit of $2.35, for roughly half of the time he was recorded as working each week, and at a rate of $8.00 per hour for the remainder of his time he was recorded as working each week. Throughout Mayoral-Climico's employment, he earned between $70.00 and $120.00 (on average $95.00) in tips per day, or on average $475.00 per week. However, throughout his employment, Papa Fresh retained 15 percent of his tips, on average $14.25 per day and $71.25 per week. Mayoral-Climico was not furnished with any wage statements prior to April 2014, and his wage statements undercounted his hours.

From June 1, 2013, through December 30, 2013, Sanchez Andrade was paid at a rate of $5.65 per straight-time hour, which amounted to $7.25 minus a tip credit of $1.60, and $8.48 per overtime hour, which amounted to less than the minimum overtime rate of $9.28 ($7.25 times

1.5 minus $1.60) for, on average, 21.2 of the straight-time hours and 2.47 of the overtime hours he was recorded as working each week and at a rate of $7.25 per straight-time hour and $10.88 per overtime hour for the remainder of the time he was recorded as working each week.  From December 31, 2013, through October 26, 2014, Sanchez Andrade was paid at a rate of $5.65 per straight-time hour, which amounted to $8.00 minus a tip credit of $2.35, $9.65 per overtime hour, which amounted to $8.00 times 1.5 minus $2.35, for on average 21.2 of the straight-time hours and 2.47 of the overtime hours he was recorded as working each week and at a rate of $8.00 per straight-time hour and $12.00 per overtime hour for the remainder of the time he was recorded as working each week.  From October 27, 2014, through November 1, 2015, Sanchez Andrade was paid $7.00 per straight-time hour that he was recorded as working per week and $10.50 per overtime hour he was recorded as working per week, with no reference to a tip credit. Throughout his employment, Sanchez Andrade had about $100.00 of his tips per week retained by Papa Fresh.  Sanchez Andrade received all his payments through checks.

From September 5, 2015, through December 30, 2016, Molina Medel was paid $6.00 per hour.  From December 31, 2016, through January 20, 2017, Molina Medel was paid $10.50 per hour.  Molina Medel received all his payments through checks.

## LEGAL STANDARD

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.  The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted).  Establishing the appropriate amount of damages involves two steps:

5

(1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Id.

## FLSA

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages . . . not less than . . . $7.25 an hour.
>
> 29 U.S.C. § 206(a)(1)(C).
>
> Under certain conditions, an employer is entitled to pay an employee an hourly wage less than the standard minimum wage if the employee receives tips from customers for his or her services. See 29 U.S.C. § 203(m), (t). However, under the FLSA, an employer may not claim a tip credit as to an employee's wages unless the employer has informed that employee of the provisions of the section of the FLSA permitting the tip credit. 29 U.S.C. § 203(m). . . . An employer who fails to provide the required notice is liable under the FLSA for unpaid minimum wages.
>
> Valle v. Gordon Chen's Kitchen LLC, 254 F.Supp.3d 665, 672-73 (S.D.N.Y. 2017).

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
>
> 29 U.S.C. § 207(a)(1).

"The regular rate of pay at which the employee is employed may in no event be less than the statutory minimum." 29 C.F.R. § 778.107. "The 'regular rate' under the Act is a rate per hour," unless an employee's earnings are determined on another basis. 29 C.F.R. § 778.109. "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be

6

liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  However,

> if the employer shows to the satisfaction of the court that the act or omission giving rise to [an action under FLSA] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.
>
> 29 U.S.C. § 260.

"[I]n addition to any judgment awarded to the plaintiff or plaintiffs," the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).

### New York Law

The basic minimum hourly wage rate was $7.25 per hour on and after January 1, 2011, $8.00 per hour on and after December 31, 2013, $8.75 per hour on and after December 31, 2014, until and including December 30, 2015, $9 per hour on and after December 31, 2015, until and including December 30, 2016, $11 per hour on and after December 31, 2016 (for employers of eleven or more employees) and $10.50 per hour on and after December 31, 2016 (for employers of ten or fewer employees).  See 12 NYCRR § 146-1.2.  "New York law also requires that an employer provide an employee notice before it may deduct a "tip credit" from the employee's base wage.  N.Y. Comp Codes R & Regs. tit. 12, § 146–2.2 (effective Jan. 1, 2011)" and "[t]he burden is on the defendants to show that they have complied with the tip notice requirement." Valle, 254 F. Supp.3d at 673.  "An employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek."  12 NYCRR § 146-1.4.  "The spread of hours is the length of the interval between the beginning and end of an employee's workday."  12 NYCRR § 146-1.6.  "On each day on

which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 NYCRR § 146-1.6(a). "The term regular rate shall mean the amount that the employee is regularly paid for each hour of work, before subtracting a tip credit, if any." 12 NYCRR § 146-3.5(a).

> If an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.
>
> 12 NYCRR § 146-3.5(b).

NYLL requires every employer to provide written notice of the rate of pay and the basis thereof, whether paid by the hour or otherwise, any allowances and certain other work-related information, as well as statements, "with every payment of wages, listing" certain work-related information, including the dates of work covered by that payment of wages and the rate of pay and basis thereof. NYLL §§ 195(1) and (3). A plaintiff may recover, for the employer's failure to provide required notices, damages not exceeding $5,000, "together with costs and reasonable attorney's fees," under each of NYLL §§ 195 (1) and (3). See NYLL §§ 198 (1-b) and (1-d). NYLL Article 19 provides:

> If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due. Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.
>
> NYLL § 663(1).

8

Under New York law, "[a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct. It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct." Jemzura v. Jemzura, 36 N.Y.2d 496, 503-04, 369 N.Y.S.2d 400, 420 (1975) (internal citations omitted).

**Attorney's Fees**

When exercising their discretion to determine the reasonableness of the attorney's fees sought in an action based on a federal question, courts in this Circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In calculating the presumptively reasonable fee, a district court must consider, among others, the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190. Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
>
> Id. at 186-87 n.3.

A reasonable hourly rate is "the rate prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Farbotko v. Clinton Cty.

of N.Y., 433 F.3d 204, 208 (2d Cir. 2005) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 1547 n.11 (1984)).  "Thus, 'a reasonable hourly rate' is not ordinarily ascertained simply by reference to rates awarded in prior cases." Id.  "[T]he equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar, experience and skill to the fee applicant's counsel.  This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." Id. at 209.  "[T]he fee applicant has the burden of showing by 'satisfactory evidence—in addition to the attorney's own affidavits'—that the requested hourly rates are the prevailing market rates." Id. (quoting Blum, 465 U.S. at 896 n.11, 104 S. Ct. 1547 n.11).  A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied.  New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

## CONCLUSIONS OF LAW

*Damages*

### Mayoral-Climico

Mayoral-Climico worked 15 non-tipped hours and 22.5 tipped hours per week and was paid $176.65 per week before tips, although the lawful minimum he should have been paid was $300.00 per week.  Over the course of his employment, Mayoral-Climico's total minimum wage shortfall amounted to $2,637.44.  Throughout Mayoral-Climico's employment, he earned on average $95.00 in tips per day, or on average $475.00 per week.  Throughout his employment, Papa Fresh retained 15 percent of his tips, on average $71.25 per week.  Over the course of his

10

employment, his total retained tips amounted to $1,536.96. Mayoral-Climico is entitled to liquidated damages in the amount of $4,174.40, the sum of his unpaid minimum wage and unlawfully retained tips. Since Mayoral-Climico was never furnished with a wage notice, either at his time of hire or at any other time, and the entirety of his employment period falls prior to the February 27, 2015 Amendment of the Wage Theft Prevention Act, the penalty is the lesser of $50.00 per week times the number of weeks that passed during his employment since his hiring, and $2,500.00. Thus, Mayoral-Climico is entitled to $1,078.57 for 21.57 weeks of his employment as a penalty for failing to provide him wage notices. Mayoral-Climico was not furnished with any wage statement until April 2014, despite being hired in January 2014. Further, his wage statements undercounted his hours and are thus not adequate under the NYLL. Because the entirety of his employment period falls prior to the February 27, 2015 Amendment of the Wage Theft Prevention Act, the penalty is the lesser of $100.00 per week times the number of weeks that passed during his employment since his hiring, and $2,500.00. Thus, Mayoral-Climico is entitled to $2,157.14 for 21.57 weeks of his employment as a penalty for failing to provide him wage statements. Mayoral-Climico spent $1,430.00 on bicycles he purchased when he started working for the defendants. The amount of Mayoral-Climico's damages during his employment is $4,174.40. Mayoral-Climico worked from January 1, 2014, through May 31, 2014, or about 0.41 years. Based on 6.37 years that have passed since Mayoral-Climico's employment ended, the prejudgment interest is $2,472.47. The Court finds that the rounded total amount of Mayoral-Climico's damages is $15,487.

  <u>Sanchez Andrade</u>

  Throughout his employment, Sanchez Andrade worked 50 hours per week as follows: (i) 12 non-tipped, non-overtime hours and 28 tipped, non-overtime hours over the first four days he

worked each week; and (ii) three non-tipped, overtime hours and seven tipped overtime hours on the fifth day he worked each week. He was paid, on average, $267.95 per week after tips for his non-overtime hours, although the lawful minimum he should have been paid for his non-overtime hours was $350.00 per week. Over the course of Sanchez Andrade's employment, his total minimum wage shortfall amounted to $10,995.44. Sanchez Andrade was paid on average $16.07 per week after tips for his non-overtime hours. However, the lawful minimum he should have been paid for his non-overtime hours was $108.75 per week starting on June 1, 2013, $120.00 per week starting on December 31, 2013, and $131.25 per week starting on December 31, 2014. Over the course of his employment, Sanchez Andrade's total overtime wage shortfall amounted to $12,534.48. Throughout Sanchez Andrade's employment, $100.00 of Sanchez Andrade's tips were withheld per week. Over the 126.29 weeks of his employment, Sanchez Andrade's total retained tips amounted to $12,628.57. Sanchez Andrade is entitled to liquidated damages in the amount of $36,158.49, the sum of his unpaid minimum wage, unpaid overtime, and unlawfully retained tips. As Sanchez Andrade was never furnished wage notices and he worked 90.86 weeks prior to the Amendment of the Wage Theft Prevention Act, and 248 days after the amendment, the penalty his employer must pay to him exceeds $5,000.00; thus, Sanchez Andrade is entitled to $5,000.00. Sanchez Andrade is also entitled to $5,000.00 for the failure to provide him wage statements. Sanchez Andrade spent $650 on bicycles he purchased when he began working for the defendants. The amount of Sanchez Andrade's damages during his employment is $36,158.49. Sanchez Andrade worked from June 1, 2013, through November 1, 2015, or about 2.43 years. Based on 4.95 years that have passed since Sanchez Andrade's employment ended, the prejudgment interest is $20,053.06. The Court finds that the rounded total amount of Sanchez Andrade's damages is $103,020.

Molina Medel

Molina Medel worked 38 hours per week, spending between two and three hours each day performing non-tipped work. In 2015 and 2016, Molina Medel was paid $228.00 per week, but was lawfully entitled to $332.50 per week in 2015, and $399.00 per week in 2016. In 2017, Molina Medel was paid $399.00 per week, but was entitled to $456.00 per week. Over the course of his employment, his total minimum wage shortfall amounted to $10,858.50. Molina Medel is entitled to liquidated damages in the amount of $10,858.50, equal to his unpaid minimum wage. Molina Medel is entitled to $5,000 as a penalty for failing to provide him wage notices and $5,000 as a penalty for failing to provide him wage statements for 72 weeks of his employment with the defendants. Molina Medel spent $1,250.00 on bicycles he purchased when he started working for the defendants. Molina Medel worked from September 5, 2015, through January 20, 2017, or about 1.38 years. Based on the 3.72 years that have passed since Molina Medel's employment ended, the prejudgment interest is $4,314.46. The Court finds that the rounded total amount of Molina Medel's damages is $37,281.

*Attorney's Fees*

The plaintiffs seek $41,329.83 in attorney's fees and $1,674.48 in costs and expenses for a total of $43,004.31 in connection with this action.

Troy states that he is the principal of Troy Law that represented the plaintiffs in this action. Troy has kept contemporaneous time records of the hours he expended on this matter, dates of services performed, and the tasks performed. Troy supervised all associates and employees of Troy Law and ensured that they kept contemporaneous time records. Troy has been representing low-income individuals, mostly Mandarin-speaking immigrants, in wage-and hour and employment discrimination cases since 1989. Troy Law spearheaded the nation's wage

and hour employment litigation advocacy and he is an attorney of record in hundreds of cases in federal courts in New York. Troy has published extensively on FLSA and NYLL and he is a member of the National Employment Lawyers Association and its affiliate in New York, NELA-NY. Troy's hourly rate is $450, and he expended 52.23 hours working on this matter.

George Byun ("Byun") was the managing associate at Troy Law; he graduated from Benjamin N. Cardozo School of Law and was admitted to the New York bar in 2015. Byun has over three years of experience and litigated over 100 wage-and-hour and employment discrimination actions in federal courts, obtaining favorable outcomes. Byun's hourly rate for legal services is $250, and he expended 15.19 hours working on this matter. Joseph Indelicato ("Indelicato") was an associate at Troy Law; he graduated from the George Washington University Law School in 2016 and was admitted to the New York bar in 2017. Indelicato's hourly rate for legal services was $250, and he expended 5.2 hours working on this matter.

William Lou ("Lou") was a clerk at Troy Law; he graduated from Northwestern University Pritzker School of Law in 2016. Lou's hourly rate for legal services is $200, and he expended 56.53 hours working on this matter. Maggie Huang ("Huang") is a certified public accountant at Troy Law and was certified in New York in 1991. Huang's hourly rate for her services is $150, and she expended 7.58 hours working on this matter. Johnny Warn ("Warn") was an accountant assistant. Warn's hourly rate for his services is $150, and he expended 0.5 hours working on this matter. Bella Yingchu Ho ("Ho") was a legal assistant at Troy Law. Ho's hourly rate for legal services is $150, and she expended 1.41 hours working on this matter.

Upon review of the plaintiffs' submissions, the Court finds that: (a) the hourly rates requested, namely, $450 for Troy, $250 for Byun and Indelicato, $200 for Lou, $150 for Warn, Huang and Ho, are reasonable; (b) 138.64, the hours of work expended on this matter are

reasonable; and (c) $1,674.48 in costs and expenses are reasonable. Accordingly, awarding the rounded amounts of $41,330 in attorneys' fees and $1, 674 in costs and expenses is warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that: (1) the following damages be awarded to the plaintiffs: $15,487 to Mayoral-Climico, $103,020 to Sanchez Andrade and $37,281 to Molina Medel; and (2) the plaintiffs' motion for attorney's fees, Docket Entry No. 88, be granted, and $41,330 be awarded in attorney's fees and $1,674 in costs and expenses.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Any requests for an extension of time for filing objections must be directed to Judge Koeltl. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York  Respectfully submitted,
      October 23, 2020

                                                      _/s/ Kevin Nathaniel Fox_
                                                      KEVIN NATHANIEL FOX
                                                    UNITED STATES MAGISTRATE JUDGE